1

2

3

4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7   ADAM VICTOR,                          Case No. 13-cv-02976-WHO

            Plaintiff,
8
                                          **ORDER GRANTING IN PART AND**
9        v.                               **DENYING IN PART MOTION TO**
                                          **DISMISS**
10  R.C. BIGELOW, INC.,
                                          Re:  Dkt. No. 18
            Defendant.
11

12

13        Plaintiff Adam Victor brings this putative class action against defendant R.C. Bigelow,

14  Inc. ("Bigelow"), alleging that various tea products are misbranded and violate California's

15  Consumer Legal Remedies Act, False Advertising Law, and Unfair Competition Law.  Bigelow

16  moves to dismiss the Complaint on a number of grounds.  For the reasons below, Bigelow's

17  Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

18                              **FACTUAL BACKGROUND**

19        As alleged in the Complaint, plaintiff Adam Victor is a California resident who purchased

20  four of Bigelow's products:  Earl Grey Tea; English Teatime Tea; Constant Comment Tea; and the

21  Six Assorted Tea Variety Pack, which contains Lemon Lift black tea in addition to the three

22  preceding teas.  Compl. ¶¶ 29, 127.  He "cares about the nutritional content of food and seeks to

23  maintain a healthy diet."  Compl. ¶ 124.

24        Defendant R.C. Bigelow, Inc., is a tea company that markets over 50 varieties of tea.

25  Compl. ¶ 7.  "Bigelow recognizes that health claims drive sales" and "actively promotes the

26  presence of antioxidants in its tea products and the alleged health benefits from using these

27  products . . . on its product labels . . . and its press release and other marketing and advertising

28  materials."  Compl. ¶ 3.  The challenged products are all black tea, all come from the same plant,

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and all have packaging of the same size and shape.  Compl. ¶¶ 10, 11.  The products contain the

2    same phrase, "delivers healthful antioxidants."  Compl. ¶ 9.  Victor read this representation and

3    relied on it in deciding to purchase the products.  Compl. ¶ 103.  He believed the representation

4    was legal.  Compl. ¶ 104.  Had he known that "the products did not in fact contain recognized and

5    accepted nutritional and healthful value, and in fact was misbranded," he would not have

6    purchased the products at the price he did or at all.  Compl. ¶ 15.  There are "cheaper alternatives"

7    available to Victor.  Compl. ¶ 75.

8          In addition to the labels on the products, Bigelow's website makes claims or contains

9    articles making claims about its products, such as that its teas are "a good source of" or are "rich"

10   in antioxidants.  Compl. ¶ 17.  The website's address is placed on all of Bigelow's product labels.

11   Compl. ¶ 19.  The sole image included in the Complaint states, "Find an ever-changing array of

12   distinctive, tea-themed gifts and recipes @ www.bigelowtea.com."  Compl. ¶ 12.

13         Victor "erroneously believed the implicit misrepresentation that the Defendant's products

14   he was purchasing met the minimal nutritional threshold" set by federal regulations.  Compl. ¶ 87.

15   "Such information was important to Plaintiff in trying to buy 'healthy' food products" and he

16   "would not have purchased these products had he known that the Defendant's products did not in

17   fact satisfy such minimum nutritional requirements with regard to antioxidants."  Compl. ¶ 87.

18   "Plaintiff justified the decision to purchase Defendant's products in substantial part on

19   Defendant's false and unlawful representations."  Compl. ¶ 134.

20         Victor alleges that under federal regulations, Bigelow's "rich in" claims are considered

21   "excellent source"-type claims, which require that the relevant nutrient be at least 20 percent of the

22   Food and Drug Administration's ("FDA") recommended daily value.  Compl. ¶ 64.  Because

23   Bigelow's tea products do not meet the minimum nutrient threshold of 20 percent or more of the

24   FDA's recommended daily intake or daily reference value, they are mislabeled.  Compl. ¶ 65.

25   Similarly, Bigelow's products that claim that they are a "good source of antioxidants" are

26   mislabeled because the FDA requires "good source"-type products to contain at least 10 percent of

27   the relevant nutrient, which the products do not meet.  Compl. ¶¶ 67-68.  Indeed, Bigelow's

28   products "do not contain any antioxidant substance or nutrient with an established [recommended

daily intake]."  Compl. ¶¶ 102, 114.

In addition, Bigelow's labels are illegal for the following reasons:

(1) because the names of the antioxidants are not disclosed on the product labels; (2) because there are no RDIs for the antioxidants being touted, including flavonoids and polyphenols; (3) because the claimed antioxidant nutrients fail to meet the requirements for nutrient content claims in 21 C.F.R. § 101.54(b), (c), or (e) for 'High' claims, 'Good Source' claims, and 'More' claims, respectively; and (4) because Defendant lacks adequate scientific evidence that the claimed antioxidant nutrients participate in physiological, biochemical, or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions after they are eaten and absorbed from the gastrointestinal tract.

Compl. ¶ 78.  "After Plaintiff learned that Defendant's Black Tea Products are falsely labeled, he stopped purchasing them."  Compl. ¶ 132.

Though he only purchased four Bigelow products, Victor seeks to bring a class action on behalf of all persons in California who purchased any of the following 28 products since June 25, 2009:  Caramel Chai Black Tea; Chocolate Chai Tea; Constant Comment Tea; Constant Comment Decaffeinated Tea; Darjeeling Tea; English Breakfast Tea; English Teatime Tea; English Teatime Decaffeinated Tea; Cinnamon Stick Tea; Earl Grey Tea; Earl Grey Decaffeinated Tea; French Vanilla Tea; French Vanilla Decaffeinated Tea; Spiced Chai Tea; Spiced Chai Decaffeinated Tea; Vanilla Caramel Tea; Vanilla Chai Tea; Chinese Oolong Tea; Plantation Mint Tea; Lemon Lift Tea; Lemon Lift Decaffeinated Tea; Raspberry Royale Tea; Pomegranate Black Tea; White Chocolate Obsession; Pumpkin Spice Tea; Eggnogg'n Tea; Six Assorted Teas Variety Pack; and Six Assorted Teas Decaffeinated Variety Pack.  Compl. ¶ 1.[1]

## PROCEDURAL HISTORY

Victor filed this action on June 27, 2013.  Dkt. No. 1.  Bigelow moved to dismiss on January 15, 2014.  Dkt. No. 18.  I held a hearing on the motion on February 19, 2014.

Victor brings six causes of action:  (1) violation of the "unlawful" prong of California's

---

[1] Victor filed a request for judicial notice of an FDA warning letter sent to Unilever, Inc.  Dkt. No. 21.  Because the letter is a document of a governmental agency, is readily verifiable, and Bigelow does not object to it, the request is GRANTED.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Lamle v. City of Santa Monica*, No. 04-cv-6355, 2010 WL 3734868, at *4-5 (C.D. Cal. July 23, 2010), *report and recommendation adopted*, No. 04-cv-6355, 2010 WL 3734864 (C.D. Cal. Sept. 22, 2010), *aff'd*, 498 F. App'x 738 (9th Cir. 2012).

United States District Court
Northern District of California

Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 *et seq.*; (2) violation of the "unfair" prong of the UCL; (3) violation of the "fraudulent" prong of the UCL; (4) misleading and deceptive advertising under California's False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17500 *et seq.*; (5) untrue advertising under the FAL; and (6) violation of California's Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750 *et seq.* The plaintiff seeks both damages and injunctive relief.

This case has been related to *Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-2204, currently pending before me, pursuant to Civil Local Rule 3-12. Before *Khasin v. Bigelow* was transferred to this Court, the Honorable Jeffrey White held in that case that: (1) the Class Action Fairness Act provided the court with jurisdiction; (2) preemption and abstention did not apply; (3) the plaintiff stated claims under the UCL, CLRA, and FAL; and (4) the plaintiff had standing to represent purchasers of green tea products but not black tea products because the representations relevant to the two categories differed.

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The complaint "does not need detailed factual allegations," but instead only needs enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012).

Additionally, fraud claims are subject to a higher standard and must be pleaded with particularity. FED. R. CIV. P. 9(b). This is true of claims state law claims, such as those under the UCL, CLRA, and FAL, that are grounded in fraud, which must "be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003) (quotation marks omitted). Such claims "must be specific

United States District Court
Northern District of California

1   enough to give defendants notice of the particular misconduct which is alleged to constitute the

2   fraud charged so that they can defend against the charge and not just deny that they have done

3   anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) *(citation omitted)*. A

4   plaintiff claiming fraud must also plead reliance. *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 51

5   Cal. 4th 310, 326-27 (2011) (UCL); *Princess Cruise Lines v. Super. Ct. of Los Angeles Cnty.*, 101

6   Cal. Rptr. 3d 323, 331 (Ct. App. 2009) (CLRA). The challenged statements must be judged

7   against the "reasonable consumer" standard under the UCL, CLRA, and FAL. *Consumer*

8   *Advocates v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d. 22, 29 (Ct. App. 2003).

9       If a motion to dismiss is granted, a court should normally grant leave to amend unless it

10  determines that the pleading could not possibly be cured by allegations of other facts. *Cook,*

11  *Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

### I.      VICTOR HAS STANDING TO BRING THIS ACTION.

#### A.  Victor Has Article III Standing.

15       "Standing under Article III of the Constitution requires that an injury be concrete,

16  particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by

17  a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010). "The party

18  invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders*

19  *of Wildlife*, 504 U.S. 555, 561 (1992). A "quintessential injury-in-fact" occurs when the

20  "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya v.*

21  *Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). Additionally, if plaintiffs "state that they

22  would not have purchased [a product] had there been proper disclosure" of relevant facts, that is

23  sufficient to plead causation. *Id.* at 1070.

24       Victor has Article III standing to bring this case. He alleges that he purchased Bigelow's

25  products that he would not have otherwise purchased had they not been mislabeled. Compl. ¶ 87.

26  This is a "quintessential injury-in-fact." *Maya*, 658 F.3d at 1069. Victor attributes the mislabeling

27  to Bigelow—mislabeling which led him to purchase products he would not have otherwise

28  purchased—thereby pleading causation. Finally, a favorable ruling from me will likely redress

United States District Court
Northern District of California

1    any cognizable claim Victor has.

2        Bigelow argues that Victor's injury "is not a real or compensable harm." Br. 5.  Bigelow

3    purchased products, received them, and "consumed them without incident or physical injury"; the

4    products "were not unfit for their intended use, and there was no difference between the product as

5    advertised and the product he purchased"; and "Plaintiff does not allege that the tea products were

6    tainted, spoiled, or contaminated." Br. 6.  Bigelow contends that Victor therefore lacks Article III

7    standing.

8        Bigelow misses the point.  As I said in another case in which the defendant made a nearly

9    identical argument, such an "argument seriously misconstrues the plaintiff['s] contentions."

10   *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-cv-296-WHO, 2013 WL 5514563, at *4 (N.D. Cal.

11   Oct. 4, 2013).  Victor is not complaining that the products did or could physically harm him;

12   rather, he argues that the products are misleadingly labeled and do not conform with statutory

13   requirements.  Victor claims that he spent money that he otherwise would not have spent had the

14   products not been mislabeled.  As another judge has stated in a similar case, "The alleged purchase

15   of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is

16   sufficient" to meet Article III standing.  *Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-2646-RMW,

17   2013 WL 675929, at *6 (N.D. Cal. Feb. 25, 2013); *see also Khasin v. Hershey Co.*, No. 12-cv-

18   01862-EJD, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 9, 2012) (holding that where a plaintiff

19   "asserts that he would not have purchased the products in question had he known the truth about

20   these products and had they been properly labeled in compliance with the labeling regulations"

21   and "that he had cheaper product alternatives for purchase at his disposal" is sufficient to establish

22   Article III standing).  The products do not have to contain "toxins" that the plaintiff consumed to

23   give rise to Article III standing, as Bigelow suggests.  *See* Br. 6.  Bigelow's argument "leads to the

24   untenable conclusion that consumers have no legal recourse for intentionally misidentified

25   products.  Such a result has no basis in law, and the plaintiffs have standing." *Morgan*, 2013 WL

26   5514563, at *4.

27       The cases cited by Bigelow do not support it.  I previously rejected arguments in this

28   context based on two cases relied upon by Bigelow, *Herrington v. Johnson & Johnson Consumer*

United States District Court
Northern District of California

*Companies, Inc.*, No. 09-cv-1597-CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010), and *Boysen*

*v. Walgreen Co.*, No. 11-cv-6262-SI, 2010 WL 2953069 (N.D. Cal. July 19, 2012).  *Morgan*, 2013

WL 5514563, at *4.  In *Herrington*, the court held that the plaintiffs did not have Article III

standing because they failed to sufficiently allege harm from carcinogens purportedly in the

challenged products and never alleged that they suffered economic injury because "they overpaid

or otherwise did not enjoy the benefit of their bargain."  2010 WL 3448531, at *2-4.  Conversely,

Victor pleads that he paid a premium for purported nutritional and health benefits that the products

did not have.  *See, e.g.*, Compl. ¶ 15.  In *Boysen*, the plaintiffs failed to establish Article III

standing since, among other things, they "[did] not allege that the products [being challenged]

violate FDA guidelines."  *Boysen*, 2010 WL 2953069, at *7.  Here, Victor does.  *See, e.g.*, Compl.

¶ 27.  As the court in *Kosta v. Del Monte Corp.*, explained, the plaintiffs in those two cases "are [ ]

alleging that the products themselves are defective or injurious" as opposed to alleging that the

defendants  have "created misleading labeling and advertising for its products which fail to

comply with objective FDA and Sherman Law standards. . . . [which] caused them to purchase

products or pay premiums they would not have otherwise."  No. 12-cv-01722-YGR, 2013 WL

2147413, at *11 (N.D. Cal. May 15, 2013).  In the latter situation, as here, Article III standing

exists.  The Complaint pleads sufficient facts to establish Article III standing.

## B.  Victor Has Statutory Standing.

In order to assert a claim under the UCL or FAL, a person must have "suffered injury in

fact and ha[ve] lost money or property as a result."  CAL. BUS. & PROF. CODE §§ 17204, 17535;

*see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-cv-1044-JSW, 2011 WL 159380, at *2

(N.D. Cal. Jan. 10, 2011) (jointly analyzing standing under CLRA, UCL, and FAL), *aff'd*, 475 F.

App'x 113 (9th Cir. 2012).  "A plaintiff has suffered economic injury when she has either:  (1)

expended money due to the defendants' acts of unfair competition; (2) lost money or property; or

(3) been denied money to which he or she has a cognizable claim."  *Samet v. Procter & Gamble*

*Co.*, No. 12-cv-1891-PSG, 2013 WL 3124647, at *3 (N.D. Cal. June 18, 2013) (citation and

quotation marks omitted).  The "as a result" language means that actual reliance is necessary for

standing.  *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326-27 (2011); *In re Tobacco II Cases*,

United States District Court
Northern District of California

7

1    46 Cal. 4th 298, 306 (2009) (stating that a plaintiff "proceeding on a claim of misrepresentation as

2    the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or

3    misleading statements").  Actual reliance and economic injury are also required to have standing

4    to sue under the CLRA.  *Bruton v. Gerber Prods. Co.*, No. 12-cv-02412-LHK, 2013 WL 4833413,

5    at *13 (N.D. Cal. Sept. 6, 2013).

6           A plaintiff bringing a claim under the "unlawful" prong of the UCL must similarly plead

7    actual reliance to establish standing if the predicate unlawful act is based on misrepresentation or

8    fraud.  *See, e.g.*, *Bruton*, 2014 WL 172111, at *9 ("[T]he Court takes this opportunity to reiterate

9    its position, stated in numerous other food misbranding cases, that actual reliance and injury are

10   required to establish statutory standing under the UCL's unlawful prong whenever the underlying

11   alleged misconduct is deceptive or fraudulent."); *Figy v. Amy's Kitchen, Inc.*, No. 13-cv-3816-SI,

12   2013 WL 6169503, at *3 (N.D. Cal. Nov. 25, 2013) ("because the statutes plaintiff relies on

13   prohibit specific types of misrepresentations on food labels—the listing of an ingredient by a name

14   other than its common or usual name—the actual reliance requirement applies to plaintiff's claim

15   even though it is brought under the unlawful prong of the UCL"); *Wilson v. Frito-Lay North*

16   *America, Inc.*, No. 12-cv-1586-SC, 2013 WL 5777920, at *7-8 (N.D. Cal. Oct. 24, 2013)

17   (applying the actual reliance requirement to the plaintiff's UCL claim alleging unlawfulness based

18   on misbranding in violation of FDA regulations and the Sherman Law "because Plaintiffs are

19   asserting that Defendant used deceptive labeling practices to hide the truth of the Products'

20   ingredients"); *Kane v. Chobani, Inc.*, No. 12-cv-2425-LHK, 2013 WL 5289253, at *6 (N.D. Cal.

21   Sept. 19, 2013) ("the actual reliance requirement also applies to claims under the UCL's unfair

22   prong to the extent such claims are based on fraudulent conduct"); *Durell v. Sharp Healthcare*,

23   183 Cal. App. 4th 1350, 1363 (Ct. App. 2010).

24          Except as explained below, Victor has standing to bring his causes of action.  Judges in

25   this district have routinely held that pleading that mislabeling has caused the plaintiff to purchase

26   products he or she might not have otherwise purchased suffices for statutory standing.  *Bruton*,

27   2014 WL 172111, at *9.  Victor alleges that he spent money purchasing products that he would

28   not have purchased were it not for Bigelow's purported mislabeling.  Compl. ¶ 87.  Victor claims

United States District Court
Northern District of California

8

1    that he read Bigelow's misstatements on its product labels and relied on them in making his

2    purchases.  Compl. ¶ 134.  That is sufficient for statutory standing under the CLRA, UCL, and

3    FAL.  *Carrea*, 2011 WL 159380, at *2 ("Accepting as true the allegations that Defendant charged

4    a premium price based on alleged misrepresentations, Plaintiff satisfies the injury in fact

5    requirement for standing to pursue claims . . . under the UCL, FAL and CLRA.").

6           Bigelow argues that "[c]ourts [ ] dismiss claims that violations of FDA's good

7    manufacturing practices caused injury."  Br. 7.  I am not sure what Bigelow means, but I presume

8    that Bigelow is arguing that allegations that a defendant violated FDA regulations are insufficient

9    to plead injury.  Bigelow cites two out-of-circuit district court decisions in support.  Br. 7 (citing

10   *Polk v. KV Pharm. Co.*, No. 09-cv-588, 2011 WL 6257466 (E.D. Mo. Dec. 15, 2011); *Mason v.*

11   *Coca-Cola Co.*, 774 F. Supp. 2d 699 (D.N.J. 2011)).  Those cases deal with Missouri and Illinois

12   state law, and since Bigelow has not represented that those states' laws have identical standing

13   requirements as California law, they are not helpful.  With regard to the sole sister district court

14   decision cited, *Chavez v. Nestle USA, Inc.*, No. 09-cv-9192, 2011 U.S. Dist. LEXIS 58733 (C.D.

15   Cal. May 2, 2011), Bigelow does not explain its relevance.  Notably, the case does not appear to

16   discuss FDA regulations or any other labeling requirements.

17          Bigelow argues that "Plaintiff cannot show 'members of the public are likely to be

18   deceived.'"  Br. 9 (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (Ct. App. 2009)).

19   In addition, "[f]ew customers would have thought about FDA labeling requirements prior to

20   purchase, nor would they be concerned about how much of a good thing (antioxidants) their non-

21   caloric, fat-free, and altogether wholesome product contained.  These are things that lawyers

22   discover after years of searching for the next big class action wave."  Br. 9.  Accordingly, "[w]hen

23   the plaintiff fails to demonstrate that a reasonable consumer would be misled by the product

24   labels," the Complaint should be dismissed.  Br. 9.

25          Bigelow mistakes the merits of the case with the necessary pleading to survive a motion to

26   dismiss.  Simply pleading that the defendant failed to disclose some material fact and that the

27   plaintiff would have acted differently with regard to a purchase had he known the truth is

28   sufficient to establish statutory standing.  *See, e.g.*, *Donohue v. Apple*, 871 F. Supp. 2d 913, 920-

United States District Court
Northern District of California

9

21 (N.D. Cal. 2012) (Whyte, J.).  Whether a reasonable consumer would in fact be deceived as alleged by Victor is seldom an issue that can be addressed during the pleading stage, except when completely implausible allegations are made, such as that a reasonable consumer would believe that there is fruit in "Froot Loops" cereal.  *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007); *see also Bruton*, 2014 WL 172111, at *9 (N.D. Cal. Jan. 15, 2014); *Brod v. Sioux Honey Ass'n, Co-op.*, 927 F. Supp. 2d 811, 830 (N.D. Cal. 2013) (denying motion to dismiss based on argument that the plaintiff's standing allegations lack plausibility); *Colucci v. ZonePerfect Nutrition Co.*, No. 12-cv-2907-SC, 2012 WL 6737800, at *7 (N.D. Cal. Dec. 28, 2012) ("Defendant's argument as to plausibility is, at bottom, an argument that no reasonable consumer is likely be deceived by the labeling of its nutrition bars.  But, as the Ninth Circuit and numerous courts have held, that issue is generally not amenable to resolution on the pleadings because it involves issues of fact.").

Victor argues that he does not need to plead reliance to bring his "unlawful" UCL claim, citing *Olivera v. American Home Mortgage Servicing, Inc.*, for the proposition that a "plaintiff need not allege reliance on misrepresentations, and may allege 'causation more generally.'"  689 F. Supp. 2d 1218 (N.D. Cal. 2010) (Armstrong, J.).  Opp'n 16.  Victor contends that "Bigelow's misbranding is essentially a strict liability offense under the UCL."  Opp'n 17.

I disagree.  Actual reliance is required for standing under the UCL, even for claims under the unlawful prong, if they sound in fraud.  *Figy v. Amy's Kitchen, Inc.*, No. 13-cv-3816-SI, 2013 WL 6169503, at *3 (N.D. Cal. Nov. 25, 2013) ("the actual reliance requirement applies to plaintiff's claim even though it is brought under the unlawful prong of the UCL").  Victor's "'misbranding theory' is not divorced from [his] other UCL theories:  they are all connected, since . . . [his] misbranding theory is essentially of a piece with [his] other theories."  *Wilson*, 2013 WL 5777920, at *7.  The Complaint states that Bigelow's labels "are unlawfully 'misbranded' under state law and [ ] have misleading language that rise to claims sounding in fraud.  Each of the Black Tea Products contains the same unlawful and misleading statement on the back of the package label:  '*delivers healthful antioxidants*.'"  Compl. ¶ 8.  The Complaint further alleges that "[u]nder California law, which is identical to federal law, a number of the Defendant's food

United States District Court
Northern District of California

1    labeling practices are unlawful because they are deceptive and misleading . . . ." Compl. ¶ 21.

2    Allegations such as these support the conclusion that his "unlawful" claims are ultimately

3    grounded in fraud.

4          Because Victor's claims sound in fraud, he must plead actual reliance for all his causes of

5    action, including his "unlawful" claim.  Victor alleges that he read the labels of the products he

6    purchased and relied on the "delivers healthful antioxidants" statement in deciding to purchase

7    them. Compl. ¶ 15.  He concedes, however, that he did not allege that he relied on statements on

8    Bigelow's website. Opp'n 9.  To the extent that Victor's claims are premised upon representations

9    made on Bigelow's website, they are DISMISSED.  *See Lanovaz v. Twinings N. Am., Inc.*, No. 12-

10   cv-2646-RMW, 2013 WL 675929, at *4 (N.D. Cal. Feb. 25, 2013) ("the court struck claims

11   depending upon information on the website as plaintiff has not adequately alleged that she bought

12   any particular product based upon specific representations or statements on the website").

13         Victor's appeal to *Olivera* does not help him because the court did not address situations in

14   which an "unlawful" claim is grounded in fraud, as Victor's "unlawful" claim is here.  Indeed, the

15   *Olivera* court dismissed the UCL claim because the court was unclear under which prong the

16   plaintiff was bringing the claim.  689 F. Supp. 2d at 1225.  Similarly, the case that the *Olivera*

17   court cites in support of its proposition, *In re Ditropan XL Antitrust Litigation*, does not support

18   the broad principle Victor proffers, i.e., that "unlawful" claims do not require pleading actual

19   reliance, because the "unlawful" claim in that case was based on allegations of anticompetitive

20   conduct and did not involve fraud.  529 F. Supp. 2d 1098, 1105-06 (N.D. Cal. 2007) (White, J.).

21         None of the other cases Victor cites help him.  *Watson Laboratories, Inc. v. Rhone-*

22   *Poulenc Rorer, Inc.*, predated California's Proposition 64 (which imposed the actual-reliance

23   requirement) and did not address the actual reliance requirement.  178 F. Supp. 2d 1099, 1120

24   (C.D. Cal. 2001).  To the extent that *Medrazo v. Honda of North Hollywood*, 205 Cal. App. 4th 1,

25   12 (Ct. App. 2012), and *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 159 (2010),

26   hold that a claim under the "unlawful" prong grounded in fraud does not require reliance,  I

27   disagree with them, as have many other courts.  *See, e.g.*, *Figy*, 2013 WL 6169503, at *3 n.1

28   (criticizing *Medrazo* for "erroneously" explaining reliance requirements and explaining that *In re*

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    *Steroid Hormone Product Cases* "was decided prior to the California Supreme Court's decision in

2    *Kwikset* and the alleged unlawful conduct was not based on a statute prohibiting specific types of

3    misrepresentations"). Finally, *Aho v. AmeriCredit Financial Services, Inc.*, 277 F.R.D. 609, 623

4    (S.D. Cal. 2011), an order on class certification, appears to actually affirm that reliance must be

5    shown if the claim is premised on "a species of fraud," which the claim there was not.

6    **C. Victor Can Bring Claims For Products He Did Not Purchase.**

7         Bigelow argues that Victor cannot allege injury-in-fact for products he did not purchase

8    and therefore he lacks Article III standing. Bigelow cites *Carrea v. Dreyer's Grand Ice Cream,*

9    *Inc.*, No. 10-cv-1044-JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011), *aff'd*, 475 F. App'x

10   113 (9th Cir. 2012), as well as other cases, in support.

11        "There is no controlling authority on whether [p]laintiffs have standing for products they

12   did not purchase." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal.

13   2012) (Beeler, J.). Some judges treat this question as one relevant to standing. *See, e.g.*,

14   *Granfield v. NVIDIA Corp.*, No. 11-cv-5403-JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11,

15   2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products

16   that she did not purchase, claims relating to products not purchased must be dismissed for lack of

17   standing."); *Larsen*, 2012 WL 5458396, at *4 (holding that a plaintiff challenging the labeling of a

18   product he did not purchase "cannot establish a legally cognizable injury under Article III"). One

19   judge noted that "[t]he majority of the courts that have carefully analyzed the question hold that a

20   plaintiff may have standing to assert claims for unnamed class members based on products he or

21   she did not purchase so long as the products and alleged misrepresentations are substantially

22   similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (Beeler,

23   J.); *see also Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012).

24        Other judges in this district have observed that "standing is merely a threshold inquiry that

25   requires the class action plaintiff to demonstrate she suffered economic injury by virtue of the

26   purchases she herself made, not for the other transactions that she seeks to represent," and

27   questions of substantial similarity are more appropriately deferred until the class certification

28   stage. *Trazo v. Nestle USA, Inc.*, No. 12-cv-2272 PSG, 2013 WL 4083218, at *4 (N.D. Cal. Aug.

9, 2013); *see also Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-cv-2910-EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) ("any concerns . . . about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage").

Regardless of the approach, judges look to various factors showing "substantial similarity" between the purchased and unpurchased products. In *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012), Judge Gonzales Rogers allowed the plaintiff's claims about a class of products to go forward, finding that "[t]here is sufficient similarity between the products purchased . . . because the same alleged misrepresentation was on all of the [products] regardless of flavor" and all of the products contained the same challenged ingredients. In *Wilson v. Frito-Lay North America, Inc.*, Judge Conti explained that courts often consider "whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." No. 12-cv-1586-SC, 2013 WL 5777920, at *4 (N.D. Cal. Oct. 24, 2013). In *Astiana v. Dreyer's Grand Ice Cream*, Judge Chen reasoned, "Plaintiffs are challenging the same kind of food products (*i.e.*, ice cream) as well as the same labels for all of the products—*i.e.*, 'All Natural Flavors' for the Dreyer's/Edy's products and 'All Natural Ice Cream' for the Haagen-Dazs products. That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors." 2012 WL 2990766, at *13.

In *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-1196, I considered the various approaches that judges in this district have taken in applying the substantial similarity test. I concluded that whether products are substantially similar depends on whether the type of claim and consumer injury between products the plaintiff did and did not purchase is substantially similar. As I explained in *Ang*:

> That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products. For example, a claim that products are illegally mislabeled as a matter of law because the labels fail to disclose something required by a statute or regulation can be resolved without a context-specific analysis of each product's label. The label is either illegal or it is not. That the products bearing the challenged label may be different – or that the labels themselves are different in other respects – is immaterial to the determination of whether the label is in fact illegal. On the other hand, a claim that a reasonable consumer would be misled by a representation

13

on a label may well require a context-specific analysis of the appearance of the label, the misrepresentation's placement on the label, and other information contained on the label. In those circumstances, a consumer may only be allowed to pursue those claims for products with identical labels. Finally, where the actual composition or appearance of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance.

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-1196, slip op. at 14 (N.D. Cal. March 13, 2014).

Without deciding issues relevant to class certification, I am persuaded that Victor has standing to bring claims challenging the 28 products for having the label "delivers healthful antioxidants." He claims that *all* of the products contain the same representation. Compl. ¶ 12. The harm that he alleges, i.e., that he was misled by that purportedly fraudulent and incorrect representation, is the same for all 28 products. While product composition and appearance can be relevant for determining whether products are substantially similar, Victor alleges that all of the challenged products are made from the same plant, differ in flavor only, and Bigelow "makes the same antioxidant related nutrient content claims on the labels of all of its black teas." Compl. ¶ 140. Though Bigelow argues that the products are not "substantially similar" because ingredients and labeling vary across the 28 products, these differences do not change the fact that, as alleged, the challenged representations are the same and cause the same harm. Bigelow does not argue that the differences affect the nature of or harm from the alleged misrepresentation, so any such differences are insufficient to defeat substantial similarity for purposes of standing.

Bigelow argues that assuming that claims concerning "substantially similar" products may be brought, Victor still lacks standing because he has not alleged sufficient facts showing that the remaining 24 accused products are the same. Bigelow asserts that Victor never relied on the non-purchased product labels and has not depicted all challenged labels in the Complaint. Br. 13. It allows that Victor "arguably meets th[e] pleading standard with respect to one specific statement—'delivers healthful antioxidants'—and only as it appears on the back of Bigelow English Breakfast product label." Br. 11 n.6 (citing Compl. ¶ 12). But even then, he does not allege that the product label is one that he actually saw. Br. 13. His assertion, however, that each product has the same representations is conclusory. Br. 12. He only shows the label for one product with that statement. Br. 12 (citing Compl. ¶ 12). "For the remaining 27 challenged Black

Tea Products, Plaintiff includes no images at all."  Br. 13.  He also does not allege whether the daily value levels are the same in the purchased products.  Br. 12.

Bigelow argues that Victor cannot satisfy Rule 9(b)'s particularity requirement for products he did not purchase.  The plaintiff does not allege whether the daily value levels are the same in the purchased products.  Br. 12.  Bigelow contends that Victor, "at the very minimum, must allege why *each* **of the 28** challenged products is deceptively labeled, what rendered the products mislabeled, *why* consumers are deceived, and *how* consumers are deceived."  Reply 4.  "[T]he reality is that the challenged Black Tea Products are substantially different, both from the purchased products and from each other."  Br. 12.

Victor does not need to individually plead facts for each and every single challenged product.  On a motion to dismiss, I must accept the plaintiff's allegations as true.  His allegation is that all the products are the same and deceive in the same manner, and the Complaint sufficiently pleads substantial similarity.  There is nothing to be gained by parsing and comparing the labels of 28 products on a motion to dismiss, nor has Bigelow pointed to any authority requiring this.

## II.        THE CLAIMS ARE NOT PREEMPTED.

Bigelow argues that Victor's claims should be dismissed because they are preempted.  It cites to the Nutrition Labeling and Education Act ("NLEA"), which amends the Food, Drug, and Cosmetic Act ("FDCA") and contains an express preemption provision that prohibits states from imposing labeling standards different from federal requirements in certain areas.  Br. 22 (citing 21 U.S.C. § 393).  Bigelow argues that "[a]mong the provisions granted preemptive effect are those governing health and nutrient content labeling claims which Plaintiff seeks to enforce."  Br. 22 (citing 21 U.S.C. § 343-1).  But Bigelow in no way explains how that provision preempts Victor's claims or how the law works.  Bigelow conclusorily asserts that "[t]he challenged statements either do not qualify as labeling statements under the FDCA, or they satisfy those regulations" without explaining why.  Br. 22.  Bigelow appears to recognize, however, that so long as state laws are consistent with federal requirements, they are not preempted.  *See* Br. 22.

The NLEA contains an express-preemption provision which says generally that no state or political subdivision of a state may directly or indirectly establish any requirement for a food

United States District Court
Northern District of California

1   subject to a standard of identity which is not identical to the requirements of the FDCA.  21 U.S.C.

2   § 34311(a)(1).  "Numerous courts have concluded that Congress did not intend the FDCA as a

3   'sweeping preemption' of all unfair competition and false and misleading advertisement claims

4   related to nutritional labels."  *Trazo v. Nestle USA, Inc.*, No. 12-cv-2272-PSG, 2013 WL 4083218,

5   at *6 (N.D. Cal. Aug. 9, 2013); *see also Khasin v. Hershey Co.*, No. 12-cv-01862-EJD, 2012 WL

6   5471153, at *4 (N.D. Cal. Nov. 9, 2012) (stating that "courts have refused to find that preemption

7   precludes the private, state-based causes of action" "based on parallel state laws that mirror the

8   relevant sections of the FDCA and the NLEA").  Rather, "it appears clear that the NELA

9   contemplates state enactment and enforcement of labeling requirements as long as they are

10  identical to or parallel NLEA requirements."  *Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-2646-

11  RMW, 2013 WL 675929, at *3 (N.D. Cal. Feb. 25, 2013.  "[T]he purpose of the NLEA is not to

12  preclude all state regulation of nutritional labeling, but to prevent State and local governments

13  from adopting inconsistent requirements with respect to the labeling of nutrients."  *Id.*

14         The Sherman Law expressly incorporates the FDCA as California's own law.  CAL.

15  HEALTH & SAFETY CODE § 110100.  State laws are not preempted if they "are equal to, or

16  substantially identical to, requirements imposed by or under" federal law.  21 C.F.R.

17  § 808.1(d)(2).  Accordingly, the NLEA "has been repeatedly interpreted not to preempt

18  requirements imposed by state law that effectively parallel or mirror the relevant sections of the

19  NLEA."  *Lanovaz*, 2013 WL 675929, at *3 (citing cases); *Clancy*, 2013 WL 4081632, at *8

20  ("Courts in this district have repeatedly refused to find preemption where a requirement imposed

21  by state law effectively parallels or mirrors the relevant sections of the FDCA.") (citations and

22  internal punctuation omitted).  The Ninth Circuit has recently held that state laws that "impose no

23  greater burden than those imposed by federal law" are not preempted by NLEA.  *Lilly v. ConAgra

24  Foods, Inc.*, No. 12-55921, 2014 WL 644706, at *3 (9th Cir. Feb. 20, 2014).

25         Victor's claims are not preempted.  As I wrote in another case, "Judges in this district have

26  rejected the same preemption arguments in similar food misbranding cases where the requirements

27  under the Sherman Law . . . are identical to the requirements imposed under the FDCA."  *Morgan*,

28  2013 WL 5514563, at *6 (explaining that Sherman Law is not expressly or impliedly preempted).

United States District Court
Northern District of California

1    Judge Tigar's observation in *Clancy*—a food-labeling case involving tea products—is especially

2    pertinent here: "Plaintiff is suing for violations of the Sherman Law, not attempting to impose

3    requirements greater than those imposed by the FDCA.  The Sherman Law is limited to the

4    requirements of the FDCA.  However, it exists independently of that law, and violating its

5    requirements would be a valid state cause of action even if the FDA ceased to exist."  *Clancy*,

6    2013 WL 4081632, at *9.  The Ninth Circuit has now affirmed this principle in *Lilly*.  For these

7    reasons, dismissal based on preemption is not appropriate.

8         Quoting *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013), Bigelow argues

9    that "[t]he plaintiff must be suing for conduct that violates the FDCA (or else his claim is

10   expressly preempted [ ]), but the plaintiff must not be suing because the conduct violates the

11   FDCA," which is what Victor is doing here.  Br. 23.  The facts of *Perez* are distinguishable.  That

12   case involved a plaintiff who brought a claim of fraud by omission because his doctors did not

13   disclose that the medical device used on him during surgery had not been approved by the FDA.

14   The court said that there is a "'narrow gap' through which a state-law claim must fit to escape

15   preemption by the FDCA," which is that "the plaintiff must not be suing *because* the conduct

16   violates the FDCA."  *Perez*, 711 F.3d at 1120.  The Ninth Circuit held that his claim was

17   preempted because he was trying to impose a disclosure requirement that exceed what was

18   required by the FDA and his fraud by omission claim existed solely by virtue of the FDCA

19   requirements.  *Id.* at 1117-19.  But as explained herein, Victor is not suing because the conduct

20   violates "the fine print of the federal code regulations," Br. 23, nor is he attempting to impose

21   additional requirements on Bigelow—he is suing because Bigelow's conduct allegedly violates the

22   Sherman Law, which mirrors the FDCA.  *See Kane*, 2013 WL 3703981, at *15 ("Plaintiffs are not

23   suing because Defendant's labeling violates the FDCA, but rather because Defendant's labeling is

24   allegedly deceptive and misleading in violation of California law.") (citation and quotation marks

25   omitted).  *Perez* does not establish that the claims here are preempted.

26   **III.    THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY.**

27        The primary jurisdiction doctrine "allows courts to stay proceedings or to dismiss a

28   complaint without prejudice pending the resolution of an issue within the special competence of

United States District Court
Northern District of California

United States District Court
Northern District of California

1   an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

2   The doctrine is discretionary but courts "considering the issue have traditionally employed such

3   factors as (1) the need to resolve an issue that (2) has been placed by Congress within the

4   jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that

5   subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise

6   or uniformity in administration." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307

7   F.3d 775, 781 (9th Cir. 2002).  Bigelow argues that I should dismiss or stay the case under the

8   primary jurisdiction doctrine.

9        I previously declined to invoke the primary jurisdiction doctrine in a similar case because

10  the issues commonly raised in food-labeling cases such as this one are well within the judiciary's

11  competence given that "[s]uch questions are frequently determined by courts." *Morgan*, 2013 WL

12  5514563, at *4 (citing *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898-99 (N.D. Cal.

13  2012) ("[A]llegations of deceptive labeling do not require the expertise of the FDA to be resolved

14  in the courts, as every day courts decide whether conduct is misleading.") (Breyer, J)).  Many

15  judges in this district have declined to invoke it as well.  *See, e.g.*, *Rahman v. Mott's LLP*, No. 13-

16  cv-3482-SI, 2014 WL 325241, at *6 (N.D. Cal. Jan. 29, 2014).

17       In at least three cases in which judges have invoked the primary jurisdiction doctrine and

18  referred questions to the FDA—including two cases from this district—the FDA declined to

19  address the issues presented by the courts.  *See Cox v. Grumma Corp.*, No. 12-cv-6502-YGR

20  (N.D. Cal.); *Barnes v. Campbell Soup Co.*, No. 12-cv-5185-JSW (N.D. Cal.); *In re Gen. Mills,*

21  *Inc., Kix Cereal Litig.*, No. 12-cv-249 (D.N.J.); Letter from Leslie Kux, Asst. Comm'r for Policy,

22  Food & Drug Admin., Dep't of Health & Human Servs., to Hon. Yvonne Gonzales Rogers, Hon.

23  Jeffrey S. White & Hon. Kevin McNulty (Jan. 6, 2014) (available at *Cox v. Grumma Corp.*, No.

24  12-cv-6502-YGR (N.D. Cal.) at Dkt. No. 70).  The FDA justified its decision based, in part, on its

25  limited resources and current priorities.

26       While those referrals dealt with issues concerning variations of the term "natural," I have

27  no reason to believe that the FDA would treat questions about antioxidants any differently, nor has

28  Bigelow provided any.  Courts are "well-equipped" to address whether a "defendant has violated

1    FDA regulations and marketed a product that could mislead a reasonable consumer"—the very

2    questions here.  *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010)

3    (Seeborg, J.).  "[T]he issues in this case are neither novel nor especially complex. . . . [and] the

4    FDA has issued extensive regulations governing [Victor's] claims.  *Gustavson v. Wrigley Sales*

5    *Co.*, No. 12-cv-01861-LHK, 2013 WL 5201190, at *17 (N.D. Cal. Sept. 16, 2013).  I decline to

6    invoke the primary jurisdiction doctrine.

7    **IV.    VICTOR CANNOT BRING CLAIMS RELATED TO BIGELOW'S WEBSITE.**

8            The parties dispute whether statements appearing on Bigelow's website constitute

9    "labeling" under the FDCA and are actionable based on the allegations here.  Br. 14; Opp'n 8.

10           21 U.S.C. § 343 states that "[a] food shall be deemed to be misbranded . . . [i]f [ ] its

11   labeling is false or misleading . . . ."  Section 321(m) defines "labeling" as "all labels and other

12   written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2)

13   accompanying such article."  21 U.S.C. § 321(m).  The Supreme Court has stated that "the phrase

14   'accompanying such article' is not restricted to labels that are on or in the article."  *Kordel v.*

15   *United States*, 335 U.S. 345, 349 (1948); *see also Wilson v. Frito-Lay N. Am., Inc.*, No. 12-cv-

16   1586-SC, 2013 WL 1320468, at *6. (N.D. Cal. Apr. 1, 2013) ("statements not actually printed on

17   a label itself can constitute 'labeling'").  Rather, a label is "accompanied by another when it

18   supplements or explains it. . . . It is the textual relationship that is significant."  *Kordel*, 335 U.S. at

19   349.  Where the "false and misleading literature . . . was designed for use in the distribution and

20   sale" of the product and "was so used" such that they were "interdependent" and "were parts of an

21   integrated distribution program," they are part of the same label.  *Id.*  With regard to a website

22   referenced on a label, merely asking readers to visit the website is insufficient to render the

23   website "labeling."  *Wilson*, 2013 WL 1320468, at *7.  As Judge Conti explained, even if a label

24   asks the consumer to visit a website, if it does not state that the website will inform the consumer

25   about nutritional information, then the website does not constitute "labeling."[2]  *Id.*

26   _____

27   [2] The Complaint attaches as Exhibit 1 a warning letter from the FDA to Unilever, Inc., asserting
     that one of its websites, whose link appeared on its products, constitutes "labeling."  Compl. Ex. 1.
28   The letter, however, does not explain why the FDA concluded that the website constitutes
     labeling.

United States District Court
Northern District of California

1   Bigelow argues that Victor does not identify any of the websites which allegedly contains

2   misrepresentations and that constitute "labeling" under FDA regulations.  Br. 14 (citing 21 U.S.C.

3   § 321(k)-(m)).  It argues that Victor does not show any link between the products and its website.

4   Br. 15.  The website reference is on the back of the product labels and asks customers to consider

5   giving Bigelow tea products as gifts; it does not refer to nutritional information.  Br. 15-16.

6   Because they are "irrelevant" and "immaterial," Bigelow asks that they be struck.[3]  Br. 16.  Victor

7   responds that under 21 U.S.C. § 321(m), Bigelow's website is incorporated into the labels on the

8   challenged products since its product labels reference the website.  Opp'n 9.  The website

9   allegedly makes the claims that Bigelow's tea products are "a good source of antioxidants" and

10  that black teas are "rich" in antioxidants.  Compl. ¶ 17.  The website therefore constitutes

11  mislabeling and violates FDA regulations and the Sherman Law. As explained in Section I.B.,

12  Victor must plead actual reliance, even for an "unlawful" claim so long as it is grounded in fraud,

13  to have standing to bring claims based on statements he did not view.  Because Victor does not

14  allege that he viewed the website, he could not have actually relied on it.

15      In addition, Victor's allegations do not support the conclusion that Bigelow's website and

16  the statements therein ("rich" and "good source") are part of the same labels as those physically on

17  the products.  The sole example Victor provides of a product label referencing Bigelow's website

18  states, "Find an ever-changing array of distinctive tea-themed gifts and recipes @

19  www.bigelowtea.com.  Visit anytime.  Visit often."  Compl. ¶ 12.  This statement does not render

20  the product's packaging and Bigelow's website so "interdependent," nor was it "part[ ] of an

21  integrated distribution program," such that the website became part of the product's label.  *Wilson*,

22  2013 WL 1320468, at *6.  The website is not referenced for nutritional purposes and the label

23  does not state that more information about antioxidants is available on the website.  As Judge

24  Conti held, even affirmatively inviting consumers to visit a website is insufficient to make it part

25

26  _____

[3] Bigelow asks that the following paragraphs be stricken:  7, 11, 17-21, 55-68, 71, 78-79, 84, 91-103, 109-113, 119, 129, and 137.  Although I conclude that the statements contained on the website are not actionable for purposes of this motion to dismiss, I see no need to strike paragraphs referencing the website since the Complaint must be amended anyway.  Victor is advised to heed the instructions given in the Conclusion of this Order.

of the label.  This is especially the case where the invitation to visit the website is related to gifts

and recipes.  On its face, the product label neither "supplements" nor "explains" the website or

vice versa, and thus the two have no relationship such that they are part of the same label.  *Kordel*,

335 U.S. at 349.  Any statement on Bigelow's website cannot be attributed to the challenged

products by virtue of a link printed on the package.

## V.   UCL, CLRA, AND FAL CLAIMS

Claims under the UCL, CLRA, and FAL are generally held to the "reasonable consumer"

standard.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  A plaintiff must

show that consumers are "likely to be deceived" by the challenged statements.  *Id.* (citation

omitted).  As the Ninth Circuit noted, "The California Supreme Court has recognized that these

laws prohibit not only [statements] which are false, but also [statements] which, although true,

[are] either actually misleading or which ha[ve] a capacity, likelihood or tendency to deceive or

confuse the public."  *Id.* (quotation marks and brackets omitted).

### A.  Unfair Competition Law

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  CAL.

BUS. & PROF. CODE § 17200.  "Each of these three adjectives captures a separate and distinct

theory of liability."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation

marks omitted).  The UCL's "coverage is sweeping, embracing anything that can properly be

called a business practice and that at the same time is forbidden by law."  *Wilson v. Hewlett-

Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

#### 1.  Victor states a claim under the "unlawful" prong.[4]

---

[4] A substantial part of this case concerns whether Bigelow violated FDA regulations as adopted by
California law, but neither side's briefing adequately explains which specific laws and regulations
are applicable and how they are applicable.  The section of Victor's brief purportedly explaining
why Bigelow's actions are unlawful extends to little more than half a page.  *See* Opp'n 7.  His
brief does nothing but cite to large swaths of his Complaint—portions which are no more helpful.
The previous judge in *Khasin v. Bigelow* cautioned the plaintiff to avoid writing "a treatise about
all of the possible FDA regulations which may have some relation to food products," yet that is
what the plaintiff here provides.  *Khasin*, Dkt. No. 48 at 2.  Indeed, the judge found that "it would
be beneficial for Plaintiff to amend her complaint to clarify her allegations" and vacated a hearing
on a motion to dismiss so that the plaintiff could submit a revised complaint.  *Id.* at 3.  It is not the
job of a court to sift through a complaint in order to construct a plausible argument for the
plaintiff.  Similarly, I am not helped by Bigelow's lack of explanation of why its products do *not*

21

United States District Court
Northern District of California

1    The "unlawful" prong of the UCL "borrows violations of other laws and treats them as

2    independently actionable." *Daugherty*, 51 Cal. Rptr. 3d at 128. "Virtually any law—federal, state

3    or local—can serve as a predicate for an action" under the "unlawful" prong of the UCL. *Durell v.*

4    *Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (Ct. App. 2010).

5    California expressly adopted federal regulations governing nutrient content claims through

6    the Sherman Law. *Bruton*, 2014 WL 172111, at *2. "The FDA promulgated regulations

7    regarding the use of nutrient content claims with respect to antioxidants." *Bronson v. Johnson &*

8    *Johnson, Inc.*, No. 12-cv-4184-CRB, 2013 WL 1629191, at *4 (N.D. Cal. Apr. 16, 2013).

9    "A claim that expressly or implicitly characterizes the level of a nutrient of the type

10   required to be in nutrition labeling . . . (that is, a nutrient content claim) may not be made on the

11   label or in labeling of foods unless the claim is made in accordance with [FDA] regulation[s]." 21

12   C.F.R. § 101.13(b). "An expressed nutrient content claim is any direct statement about the level

13   (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" 21 C.F.R.

14   § 101.13(b)(1). "An implied nutrient content claim is any claim that [d]escribes the food or an

15   ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount

16   (e.g., 'high in oat bran'); or [s]uggests that the food, because of its nutrient content, may be useful

17   in maintaining healthy dietary practices and is made in association with an explicit claim or

18   statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')." 21 C.F.R. § 101.13(b)(2).

19   21 C.F.R. § 101.54(g) regulates "nutrient content claims" using the term "antioxidant." A

20   claim concerning antioxidants can be made when: (1) "[a]n RDI [reference daily intake] has been

21   established for each of the nutrients"; (2) "[t]he nutrients that are the subject of the claim have

22   recognized antioxidant activity"; (3) "[t]he level of each nutrient that is the subject of the claim is

23   sufficient to qualify" for other subprovisions of the section; and (4) "[t]he names of the nutrients

24   that are the subject of the claim are included as part of the claim" or are referenced elsewhere on

25

26   _____

27   violate any law—all Bigelow appears to have provided are two conclusory sentences asserting that
     they do not. *See* Br. 22 ("The product labels that Plaintiff challenges meet the federal regulations
     that occupy and control the sphere of the regulatory framework at issue. The challenged

28   statements either do not qualify as labeling statements under the FDCA, or they satisfy those
     regulations."). Its reply brief does not even address the issue at all.

1    the same panel.  21 C.F.R. § 101.54(g).

2         Claims are unlawful if they constitute a nutrient content claim and do not comply with the

3    applicable regulations for such claims.  "Good source" and "rich in" are defined by the NLEA.

4    *See* 21 C.F.R. § 101.54(b)-(c).  A product that claims to be "rich in" some nutrient must

5    "contain[ ] 20 percent or more of the RDI or the DRV per reference amount customarily

6    consumed."  21 C.F.R. § 101.54(b)(1).  A product that claims to be a "good source" of some

7    nutrient must "contain[ ] 10 to 19 percent of the RDI or the DRV per reference amount

8    customarily consumed."  21 C.F.R. § 101.54(c)(1).

9         It is not obvious whether the challenged statement, "delivers healthful antioxidants,"

10   actually violates these provisions.  To begin, it is unclear whether the statement is a covered

11   nutrient content claim and thus falls under the regulations' purview.  The statement is certainly not

12   an "expressed nutrient content claim" because it does not contain a "direct statement about the

13   level (or range) of a nutrient."  21 C.F.R. § 101.13(b)(1).  As for whether it is an "implied nutrient

14   content claim," while the statement does not "suggest[ ] that a nutrient is absent or present in a

15   certain amount," it does suggest that "the food, because of its nutrient content, may be useful in

16   maintaining healthy dietary practices," though it is ambiguous whether it "is made in association

17   with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')."

18   21 C.F.R. § 101.13(b)(2).  To say that a product "delivers healthful antioxidants" is to suggest that

19   there is some amount of antioxidants, which conceivably (and literally) makes "an explicit claim

20   or statement about a nutrient."  But given the specificity of the example that follows—" healthy,

21   contains 3 grams (g) of fat"—which identifies a particular nutrient and a precise amount, the

22   challenged statement appears to fall short of being "an explicit claim or statement about a

23   nutrient."

24        Assuming that the challenged statement is a "nutrient content claim," no enunciated

25   standard under 21 C.F.R. § 101.54 is analogous to Bigelow's alleged "delivers healthful

26   antioxidants."  In *Trazo v. Nestle USA, Inc.*, observing that "[a] specific, finite list [in a law or

27   regulation] implies that other terms are excluded," Judge Grewal has dismissed as preempted a

28   claim challenging the statement "natural source of antioxidants" because the term "source" cannot

23

United States District Court
Northern District of California

be "conflate[d]" with the term "good source" (which is defined in 21 C.F.R. § 101.54(c)(1)) since doing so goes beyond the boundaries of FDA's regulations.  No. 12-cv-2272-PSG, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013).  Judge Grewal also noted that the term does not "characterize[ ] the level" of antioxidants and thus was not a nutrient content claim as defined in Section 101.54.  *Id.* at *9.  This is also true because the term "natural" does not modify the term "source" such that it indicated a level of antioxidants.  *Id.*  Judge Grewal therefore held that the plaintiff "fail[ed] to state a claim that the[ ] products violated 21 C.F.R. § 101.54(g)."  *Id.*

In *Lanovaz v. Twinings North America, Inc.*, however, Judge Whyte found that the same challenged statement—"natural source of antioxidants"—was adequately pleaded as a content nutrient claim despite the defendant's argument that the statement does not characterize the level of any nutrients.  No. 12-cv-2646-RMW, 2013 WL 675929, at *4 (N.D. Cal. Feb. 25, 2013).  While recognizing that "[t]he FDA has not officially defined 'source of' or 'natural source of' as making a nutrient content claim," Judge Whyte appears to have found it persuasive that the FDA "has identified similar terms such as 'excellent source of,' 'good source of,' 'contains,' and 'provides' as the operative words in nutrient content claims."  *Id.* at 5.  He also relied on a March 24, 2011, warning letter issued to Jonathan Sprouts, Inc., in which "the FDA advised that certain claims using the word 'source' were nutrient content claims."  *Id.*  Accordingly, Judge Whyte concluded that the plaintiff was "asserting a 'nutrient content claim' under state law that is identical to what the FDA describes as a nutrient content claim" and "her state claims are not preempted."[5]  *Id.*  He therefore allowed the "unlawful" claim to survive.

Judge Tigar's analysis in *Clancy v. The Bromley Tea Co.*, No. 12-cv-3003-JST, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013), is similar to Judge Whyte's in *Lanovaz*.  In *Clancy*, Judge Tigar observed that claims that the challenged products "contain" and are a "source of" antioxidants were not "officially defined by FDA regulations as making a nutrient content claim."  *Id.* at *9.  But like Judge Whyte, citing the warning letter the FDA issued to Jonathan Sprouts,

---

[5] On a later order denying a motion for summary judgment brought by the defendant, Judge Whyte stated that he "does not find as a matter of law that the statement is not a nutrient content claim." *Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-2646-RMW, 2014 WL 46822, at *7 (N.D. Cal. Jan. 6, 2014).

United States District Court
Northern District of California

1    Inc., Judge Tigar noted that "the FDA explained that claims using the word 'source' were nutrient

2    content claims" and that "[b]y using the term 'source,' the company had 'characterize[d] the level

3    of nutrients of a type required to be in nutrition labeling.'  Since the FDA had not defined the term

4    'source' by regulation, it could not be used in nutrient content claims."  *Id.* (citations omitted).

5    Accordingly, Judge Tigar stated that "the Court cannot conclude that Plaintiff has failed to assert a

6    legitimate nutrient content claim under California law" and that "it would be inappropriate to

7    dismiss the claim as preempted."  *Id.* at *10.

8            While the law still appears unsettled, I am persuaded that Victor plausibly pleads that

9    Bigelow's statement, "delivers healthful antioxidants," violates FDA regulations concerning the

10   term "antioxidant" and, in turn, the Sherman Law.  Section 101.54(c)(1)'s defined term,

11   "provides," is sufficiently analogous to the term "delivers" used by Bigelow such that it may also

12   be a nutrient content claim.  While I am unaware of any FDA documents concerning the word

13   "delivers," the FDA has found in warning letters that words akin to those listed in laws and

14   regulations may be similarly regulated.  *See Clancy*, 2013 WL 4081632, at *9; *Lanovaz*, 2013 WL

15   675929, at *5.  "As set forth by the Supreme Court in *Auer v. Robbins*, an agency's interpretation

16   of its own regulation, even if set forth in an informal document, is controlling unless plainly

17   erroneous or inconsistent with the regulation."  *Kane v. Chobani, Inc.*, No. 12-cv-02425-LHK,

18   2013 WL 3703981, at *17 (N.D. Cal. July 12, 2013) (citing *Auer v. Robbins*, 519 U.S. 452, 461

19   (1997)) (quotation marks and brackets omitted).  Assuming that "delivers healthful antioxidants"

20   is a nutrient content claim, Victor has alleged that the products have not met the requirements for

21   making such a claim.  *See, e.g.*, Compl. ¶ 61.  Victor has pleaded sufficiently to survive a motion

22   to dismiss for this cause of action.  Bigelow's motion to dismiss Victor's claims based on the term

23   "antioxidant" is DENIED.

24           Victor also appears to be challenging Bigelow's assertion that the antioxidants are

25   "healthful."  *See* Compl. ¶¶ 90-113.  With regard to those allegations, the Complaint consists of

26   nothing more than a litany of FDA regulations and federal statutes, and no factual allegation about

27   how Bigelow's actions with regard to this statement are either unlawful or fraudulent aside from

28   conclusory statements that do not suffice for Rule 8's "plausibility" standard, let alone Rule 9's

25

1    "particularity" standard for pleading. To the extent that Victor relies on violations based on the

2    term "healthful," they are DISMISSED.

3                    **2.  Victor fails to state a claim under the "fraudulent" prong.**

4            The "fraudulent" prong of the UCL "requires a showing [that] members of the public are

5    likely to be deceived." *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002). "[W]hether

6    a business practice is deceptive will usually be a question of fact not appropriate for decision on

7    demurrer." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). But "where a

8    court can conclude as a matter of law that members of the public are not likely to be deceived by

9    the product packaging, dismissal is appropriate." *Werbel v. Pepsico, Inc.*, No. 09-cv-4456-SBA,

10   2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010).

11           Judges in this district have differed about the level of particularity necessary to

12   successfully plead claims of fraud. In *Clancy*, Judge Tigar held that "alleg[ing] that Defendant's

13   product labels and website were in violation of the Sherman Law, and that Plaintiff reasonably

14   relied on those statements to purchase products he would not have purchased absent these

15   allegedly deceptive statements" satisfies Rule 9(b)'s pleading requirements. *Clancy*, 2013 WL

16   4081632, at *10-11. Similarly, in *Lanovaz*, Judge Whyte held that the plaintiff's allegation that a

17   "label meant that the tea met a minimum nutritional requirement and that she would not have

18   bought it, or paid a premium for it, had she known that it did not meet the minimum requirements

19   for listing a product as containing antioxidants," was sufficient to state a plausible claim under the

20   UCL, CLRA, and FAL. *Lanovaz*, 2013 WL 675929, at *6.

21           Conversely, Judge Grewal held in *Trazo*, "Throughout their complaint, Plaintiffs fail to

22   allege either that a 'reasonable consumer' would be deceived, or the circumstances in which they

23   themselves read the labels of the named products and interpreted those labels differently, or both.

24   While regulatory violations might suggest that these statements might be misleading to a

25   reasonable consumer, that alone is not enough to plead a claim under the FAL, CLRA, or the

26   misleading/false advertising prongs of the UCL." *Trazo*, 2013 WL 4083218, at *10.

27           Judge White in *Khasin v. Bigelow* allowed the fraudulent claims to go forward, stating that

28   "[a]lthough Plaintiff could have provided more details, the Court finds that Bigelow has sufficient

United States District Court
Northern District of California

26

1    notice of the misconduct alleged." *Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-2204-JSW, 2013 WL

2    2403579, at *3 (N.D. Cal. May 31, 2013).

3            Bigelow argues that the statement "delivers healthful antioxidants" is neither false nor

4    unlawful, and could not plausibly deceive a reasonable consumer." Br. 20. The statement is not a

5    health or nutrient content claim. Br. 20. Bigelow argues that Victor does not deny that black tea

6    is in fact "healthful" or contend that English Breakfast tea (the only depicted product in the

7    Complaint) lacks antioxidants. Reply 10. Bigelow argues that Victor's fraudulent claims must

8    fail because he cannot show that a reasonable consumer would be deceived by the statement

9    "delivers healthful antioxidants." Reply 11 (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App.

10   4th 496, 506-07 (Ct. App. 2003)).

11           Victor's opposition brief does not give a single argument or reason why the challenged

12   statement is likely to deceive anyone. Opp'n 18-20. I surmise that Victor means to argue that any

13   violation of applicable food-labeling regulations is per se misleading. *See* Opp'n 19 ("In other

14   words, a violation of FDA regulations means that, in the judgment of the FDA, the label is

15   misleading."). The Complaint is filled with allegations that Victor would not have purchased the

16   challenged products if he knew that they did not comply with FDA regulations. *See, e.g.*, Compl.

17   ¶¶ 103, 104, 112. Quoting a portion of *Khasin v. Hershey Co.*, Victor claims that Judge Davila

18   allowed similar "misleading" claims to go forward. Opp'n 18-19 (quoting *Khasin v. Hershey Co.*,

19   No. 12-cv-01862-EJD, 2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012)). In particular, Victor

20   asserts that his "awareness (or lack thereof) of the regulations is irrelevant to whether Defendant's

21   violation of those regulations is likely to mislead." Opp'n 19.

22           Whether or not a reasonable consumer would know what the applicable FDA regulations

23   are, Victor still fails to plead with particularity how precisely a reasonable consumer would be

24   misled by the term "delivers healthful antioxidants" or what exactly is misleading about it aside

25   from the fact that it may technically violate FDA regulations. A statement may technically violate

26   some law and yet a reasonable consumer may have no dashed expectation about it. In this regard,

27   I respectfully disagree with *Hershey*'s holding that "Plaintiff's allegation that but for Defendant's

28   misrepresentations he would not have purchased the products, and thus he was deceived" is

United States District Court
Northern District of California

27

1    sufficient to plead fraud. *Hershey*, 2012 WL 5471153, at *8.

2          Victor fails to adequately plead that the statement "delivers healthful antioxidants" is

3    fraudulent. He does not explain how the statement is either false or misleading to a reasonable

4    consumer. He does not allege that Bigelow's products do not in fact have antioxidants or that the

5    antioxidants are not in fact healthful. In short, he does not plead what expectations a reasonable

6    consumer might have from seeing or hearing that statement such that they were fraudulently

7    misled by what Bigelow actually offered. Although Victor argues that he reasonably expected all

8    consumer products to abide by the relevant regulations, *see* Opp'n 19, as Judge Grewal explains,

9    "[w]hile regulatory violations might suggest that [ ] statements might be misleading to a

10   reasonable consumer, that alone is not enough to plead a claim under the FAL, CLRA, or the

11   misleading/false advertising prongs of the UCL." *Trazo*, 2013 WL 4083218, at *10. For that

12   reason, Victor's citation to *Delacruz v. Cytosport, Inc.*, for the proposition that "FDA regulations

13   *may* lend objective criteria by which to determine whether certain words and phrases used on the

14   labels are misleading" does not help it because the ultimate question in UCL, CLRA, and FAL

15   fraud claims is what a reasonable consumer expects, which may have absolutely no relation to

16   FDA regulations. No. 11-cv-3532-CW, 2012 WL 2563857, at *7 (N.D. Cal. June 28, 2012)

17   (emphasis added). Indeed, Victor's expectation is unreasonable as a matter of law because no

18   reasonable consumer would expect that every product on the market conforms with all applicable

19   laws—to hold otherwise would subject defendants to fraud claims even for arcane, minute,

20   immaterial, or technical violations of certain laws. Holding that a reasonable consumer expects

21   any product to comply with all applicable laws would render every "unlawful" claim a

22   "fraudulent" one as well.[6]

23   _____

24   [6] As Judge Koh observed, "Plaintiffs' 'illegal product' theory would eviscerate the enhanced
     standing requirements imposed by Proposition 64 and the California Supreme Court's decision in
25   *Kwikset*. As explained in *Kwikset*, the voters enacted Proposition 64 in 2004 as a means of
     'confin[ing] standing to those actually injured by a defendant's business practices and [ ]
26   curtail[ing] the prior practice of filing suits on behalf of clients who have not used the defendant's
     product or service, viewed the defendant's advertising, or had any other business dealing with the
27   defendant.' Were the Court to hold that Plaintiffs . . . have standing to bring claims based solely
     upon allegations that they would not have purchased a product that was misbranded, purchasers
28   who never 'viewed the defendant's advertising' or misleading labeling would have standing to
     sue. Such a holding is inconsistent with Proposition 64 and *Kwikset*." *Kane v. Chobani, Inc.*, No.

United States District Court
Northern District of California

28

1    Victor's Third Cause of Action is DISMISSED.

2              **3.   Victor fails to state a claim under the "unfair" prong.**

3         "California appellate courts disagree on how to define an 'unfair' act or practice in the

4    context of a UCL consumer action."  *Rubio*, 613 F.3d at 1204; *Davis v. Ford Motor Credit Co.*,

5    101 Cal. Rptr. 3d 697, 707 (Ct. App. 2009).  Some courts have held that the "unfair" prong

6    requires alleging a practice that "offends an established public policy or is immoral, unethical,

7    oppressive, unscrupulous or substantially injurious to consumers," and the policy must be

8    "tethered to specific constitutional, statutory or regulatory provisions." *Bardin v. Daimlerchrysler*

9    *Corp.*, 39 Cal. Rptr. 3d 634, 642, 645 (Ct. App. 2006) (quotations omitted).  Other courts have

10   held that the court must apply a balancing test that "weigh[s] the utility of the defendant's conduct

11   against the gravity of the harm to the alleged victim." *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d

12   439, 456 (Ct. App. 2000).

13        Under the first test, Victor fails to explain how Bigelow's labels "offend[ ] an *established*

14   *public policy*"—as explained above, whether Bigelow's labels violates FDA regulations and the

15   Sherman Law, as well as the policies behind them, is ambiguous at best.  Victor also does not

16   explain how Bigelow's product labeling is "immoral, unethical, oppressive, unscrupulous or

17   substantially injurious to consumers."  He fails to state a claim under the first test of the "unfair"

18   prong.

19        Under the second test, Victor fails to plead sufficient facts for me to say whether the utility

20   of the defendant's conduct does or does not outweigh the gravity of the alleged harm to the

21   plaintiffs, which is his burden.  The utility of Bigelow's conduct is arguably that it encourages

22   consumers to use a healthy product.  And though Victor has alleged that he has spent money he

23   would not have otherwise spent on the allegedly mislabeled products, he does not say whether

24   consumers suffered any other harm that outweighs any utility from Bigelow's challenged conduct.

25   Thus, Victor fails to state a claim under either test of the "unfair" prong.

26        Victor's Fourth Cause of Action is DISMISSED.

27

28   12-cv-2425-LHK, 2013 WL 5289253, at *9 (N.D. Cal. Sept. 19, 2013) (citation omitted).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## VI.    CALIFORNIA LEGAL REMEDIES ACT

### A.  Notice

Under the CLRA, a plaintiff must give an alleged violator notice of any alleged wrongdoing 30 days before filing a suit for damages and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation." CAL. CIV. CODE § 1782(a).  The alleged wrongdoer then has 30 days to remedy the problem and thereby avoid damages.  A plaintiff who files suit without properly giving notice may not recover damages under the CLRA.  CAL. CIV. CODE § 1782(b).

This lawsuit was filed on June 27, 2013.  Dkt. No. 1.  Bigelow argues that Victor's counsel sent Bigelow a letter on November 13, 2013, which attached the complaint and purported to be the required CLRA notice.  Br. 21.  Bigelow argues that the letter is insufficient to serve as the required CLRA notice because it is untimely and lacks the specificity necessary for Bigelow to take appropriate corrective action.   Bigelow therefore argues that the CLRA claim should be dismissed.

Citing the Declaration of Pierce Gore, Victor argues that because Bigelow was previously sued in the *Khasin v. Bigelow* case, Bigelow "was fully advised of the claims against it and Plaintiff discharged his statutory duty to inform Defendant of the claims."  Opp'n 23.  He cites no legal authority in support of this argument.

"The CLRA's notice requirement is not jurisdictional, but compliance with this requirement is necessary to state a claim."  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007).  As the California Court of Appeal explained, the notice requirement is intended to "provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished. This clear purpose may only be accomplished by a literal application of the notice provisions." *Outboard Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 41 (Ct. App. 1975).  The statute explicitly states that "[t]hirty days or more prior to *the* commencement of an action for damages," notice shall be given.  CAL. CIV. CODE § 1782(a) (emphasis added).

I find that Mr. Gore's letter sent nearly four and a half months after the Complaint was

1    filed is insufficient to provide the notice required under Section 1782.  Nor does his letter from

2    June 6, 2012, in the *Khasin v. Bigelow* case suffice.  Dkt. No. 21.  There is no suggestion in the

3    statute that notice of an earlier lawsuit—even if the subject matter is substantially similar—meets

4    the notice requirement.  Therefore, Victor should have provided notice to Bigelow 30 days before

5    filing his CLRA claim.

6           **B.  Victor Fails To State A Claim Under The CLRA.**

7           Even if Victor had provided timely notice of his CLRA claim, he still fails to state a claim

8    under the CLRA.  The CLRA prohibits "[r]epresenting that goods . . . have . . . characteristics, . . .

9    benefits, or quantities which they do not have" or "[r]epresenting that goods . . . are of a particular

10   standard, quality, or grade . . . if they are of another."  CAL. CIV. CODE § 1770.  The challenged

11   statements must be judged against the "reasonable consumer" standard.  *Consumer Advocates*, 8

12   Cal. Rptr. 3d. at 29.  Because Victor's CLRA claim is subject to the "reasonable consumer"

13   standard, he fails to state a claim under the CLRA for the same reasons he fails to state a claim

14   under "fraudulent" prong of the UCL.

15          Victor's Sixth Cause of Action is DISMISSED.

16   **VII.    FALSE ADVERTISING LAW**

17          The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."  *Williams*,

18   552 F.3d at 938.  The statute prohibits "not only advertising which is false, but also advertising

19   which, although true, is either actually misleading or which has a capacity, likelihood or tendency

20   to deceive or confuse the public."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (brackets and

21   quotation marks omitted).  The plaintiff must show that the challenged statements will mislead an

22   "ordinary consumer acting reasonably under the circumstances."  *Lavie v. Procter & Gamble Co.*,

23   129 Cal. Rptr. 2d 486, 498 (Ct. App. 2003).  "In determining whether a statement is misleading

24   under the statute, the primary evidence in a false advertising case is the advertising itself," and the

25   "misleading character of a given representation appears on applying its words to the facts."

26   *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 46 (Ct. App. 2006) (citations and

27   quotation marks omitted).

28          For the same reasons that Victor fails to adequately state a claim under the "fraudulent"

United States District Court
Northern District of California

1   and "unfair" prongs of the UCL, and the CLRA, he also fails to adequately state a claim under the

2   FAL.  Victor's Fourth and Fifth Causes of Action are DISMISSED.

3   **VIII.   NON-CALIFORNIA CONSUMERS**

4         Bigelow argues that Victor "also seeks to expand this case to include a nationwide putative

5   class of consumers, or at least leaves open the possibility through specific allegations."  Br. 24.

6   Bigelow asks me to dismiss or strike these claims.

7         Victor has only brought an action on behalf of a California class.  Compl. ¶ 1.  There is no

8   need to address Bigelow's concern now because it is unripe.

9                                    **CONCLUSION**

10        For the reasons above, Bigelow's motion to dismiss Victor's First Cause of Action based

11  on alleged violations of the Sherman Law based on FDA regulations related to the term

12  "antioxidant" is DENIED.  The Motion to Dismiss all other causes of action is GRANTED WITH

13  LEAVE TO AMEND.

14        Victor is cautioned to file an amended complaint that is succinct, logically ordered, and

15  clear.  A complaint that contains yet another jumbled and repetitive recitation of laws and

16  regulations will not be considered.  Victor is further cautioned to plead with the requisite *factual*

17  detail as required by Federal Rules of Civil Procedure 8 and 9, and to explain in a structured way

18  any relevant statutes and regulations.

19        Any amended complaint must be filed within 30 days.

20        **IT IS SO ORDERED.**

21  Dated:  March 14, 2014

22                                    _____

23                                    WILLIAM H. ORRICK
                                      United States District Judge

24

25

26

27

28

United States District Court
Northern District of California