UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADAM VICTOR,

    Plaintiff,

    v.

R.C. BIGELOW, INC.,

    Defendant.

Case No. 13-cv-02976-WHO

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

Re: Dkt. No. 73

## INTRODUCTION

Plaintiff Adam Victor seeks to certify a class under Rules 23(b)(2) and 23(b)(3) in this putative consumer class action regarding allegedly misleading labels on 28 varieties of R.C. Bigelow, Inc.'s black tea products. Because Victor has not presented a viable damages model and is not entitled to injunctive relief, class certification is not appropriate and his motion is DENIED.[1]

## BACKGROUND

Victor seeks certification of a class of all persons in California who purchased for household use one or more of the following black tea products manufactured and sold by Bigelow since June 25, 2009: Caramel Chai Black Tea; Chocolate Chai Tea; Constant Comment Tea; Constant Comment Decaffeinated Tea; Darjeeling Tea; English Breakfast Tea; English Teatime Tea; English Teatime Decaffeinated Tea; Cinnamon Stick Tea; Earl Grey Tea; Earl Grey Decaffeinated Tea; French Vanilla Tea; French Vanilla Decaffeinated Tea; Spiced Chai Tea; Spiced Chai Decaffeinated Tea; Vanilla Caramel Tea; Vanilla Chai Tea; Chinese Oolong Tea; Plantation Mint Tea; Lemon Lift Tea; Lemon Lift Decaffeinated Tea; Raspberry Royale Tea;

---

[1] The analysis in this Order matches the analysis in the Order filed today in *Khasin v. R. C. Bigelow, Inc.*, 12-cv-2204 (WHO) (N.D. Cal. March 29, 2016), concerning plaintiff's motion for class certification of Bigelow's green tea products.

Pomegranate Black Tea; White Chocolate Obsession; Pumpkin Spice Tea; Eggnogg'n Tea; Six Assorted Teas Variety Pack; and Six Assorted Teas Decaffeinated Variety Pack (the "Black Tea Products"). Third Amended Complaint ("TAC") ¶1 [Dkt. No. 78].[2]

Bigelow is one of the largest tea producers in the country. *Id.* ¶6. All the Black Tea Products are black tea, come from the same plant, and have packaging of similar size and shape. *Id.* ¶13. As alleged in the TAC, the products all contain the same phrase, "*delivers healthful antioxidants.*" *Id.* ¶12. While federal food labeling laws and regulations require a manufacturer to use only approved nutrient claims on a food label, Victor claims none of the Black Tea Products contain an antioxidant nutrient accepted by regulation; thus the use of "antioxidant" on its product labels violates labeling rules. *Id.*

Victor alleges that "[t]he phrase '*delivers healthful antioxidants*' suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim that the claimed antioxidants in tea (which are flavonoids or polyphenols) are 'healthful' and have a beneficial effect on humans. However, the [Food and Drug Administration] has not set a recommended daily intake (RDI) for flavonoids, polyphenols or any other substance in tea and has not recognized a substantial consensus of the scientific or medical community of any beneficial effects on humans. Therefore, the claim on Bigelow's [B]lack [T]ea [P]roducts is in violation of §§ 21 C.F.R. 101.13, 101.54 and 101.65 and identical California law, and the products at issue are unlawfully misbranded as a matter of law and are legally worthless." *Id.* ¶14. Similarly, Victor contends that although Bigelow claims its products are "healthful," they "do not contain any ingredient which provides at least 10% of the daily value (DV) of vitamin A, vitamin C, calcium, iron, protein, or fiber per reference amount as required by" 21 C.F.R. § 101.65(d)(2). *Id.* ¶12.

Victor purchased four of Bigelow's tea products: Earl Grey Tea; English Teatime Tea; Constant Comment Tea; and the Six Assorted Teas Variety Pack that contains, in part, Lemon Lift

---

[2] Bigelow argues that Victor seeks to define his class as purchasers of all of Bigelow's black tea, which includes more than 60 varieties. Oppo. at 4 [Dkt. No. 82]. However, despite some overly broad language in the complaint, Victor has made it clear that his intention is only to certify a class of purchasers of the 28 delineated varieties. TAC ¶1; Reply at 3 [Dkt. No. 83].

Tea in addition to the three preceding teas. *Id.* ¶2. At "various times" during the class period, Victor read the "*delivers healthful antioxidants*" claim appearing on the labels of the products he purchased and relied on it in his decision to purchase those products. *Id.* ¶¶17, 65. Victor alleges that the claim "would be considered by a reasonable consumer" when deciding to purchase the products. *Id.* ¶39. Victor "did not know, and had no reason to know," that the products were misbranded and would not have bought the products, or paid a "premium" for them, had he known the truth. *Id.* ¶69. But for the misrepresentations on Bigelow's labels, he would have "foregone purchasing [Bigelow's] products and bought other products readily available at a lower price or would not have purchased any product at all." *Id.* ¶67. Bigelow's practices deceived Victor. *Id.* ¶18. After learning that the Black Tea Products were falsely labeled, he stopped purchasing them. *Id.* ¶70.

However, Bigelow asserts that the "*delivers healthful antioxidants*" statement never appeared on 9 of the 28 varieties of the Black Tea Products. McCraw Decl. ¶7 [Dkt. No. 82-3]. While it did appear on the four types of tea Victor alleges to have bought, it never appeared on the Assorted Blends Decaf, Caramel Chai, Chocolate Chai Tea, Pomegranate Black Tea, Pumpkin Spice Tea, Spiced Chai Decaf, Spiced Chai Tea, Vanilla Chai Tea, and While Chocolate Obsession. *Id.* Additionally, Bigelow removed the disputed claim from the product labels of all remaining 19 identified Black Tea Products in 2013 *Id.* Because the changes were "rolled-out in waves" and Bigelow has no way to track which retailers hold onto older inventory or which packaging is sold at any given time, there is no reliable way to know whether a consumer purchase after the label change indicates that the product contained the disputed statement. *Id.* ¶11.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class actions. "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). The burden is on the party seeking certification to show, by a preponderance of the evidence, that the prerequisites have been met.

1  *See Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2550-51 (2011); *Conn. Ret. Plans & Trust Funds v. Amgen Inc.,* 660 F.3d 1170, 1175 (9th Cir. 2011).

Certification under Rule 23 is a two-step process. The party seeking certification must first satisfy the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Specifically, Rule 23(a) requires a showing that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The party seeking certification must then establish that one of the three grounds for certification applies. *See* Fed. R. Civ. P. 23(b). Here, plaintiff seeks certification under Rules 23(b)(2) and 23(b)(3). Rule 23(b)(2) requires that a plaintiff show "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires a plaintiff to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"A court's class-certification analysis . . . may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (internal quotation marks omitted). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 1194-95. "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

4

**DISCUSSION**

**I.    RULE 23(b)(3)**

For a class action to be certified under Rule 23(b)(3), the class representative must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotation marks and citations omitted).

To satisfy Rule 23(b)(3)'s predominance requirement, a plaintiff must demonstrate that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013). The damages methodology must be tied to the plaintiff's theory of liability. In other words, Victor's damages "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to [Bigelow's misleading conduct]. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id*. (internal citations and quotation marks omitted). "At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (internal quotation marks and citations omitted).

Victor offers two damages models: (i) a restitution calculation; and (ii) a nominal damages alternative. Neither has merit.

Victor's restitution calculation essentially amounts to damages totaling the full retail price of the tea. Victor purportedly bases his calculation on a formulation I provided in a previous order – that "the proper measure of restitution in a mislabeling case is the amount necessary to

5

compensate the purchaser for the difference between a product as labeled and the product as received, not the full purchase price or all profits." Dkt. No. 68 at 1; s*ee also Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-01831-LHK, 2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014) (finding that "[t]he proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received") (internal citations and quotation marks omitted); *Ivie v. Kraft Foods Glob., Inc*., No. 12-cv-02554-RMW, 2015 WL 183910, at *2 (N.D. Cal. Jan. 14, 2015) (concluding that "restitutionary damages [in a mislabeling case should] be the price premium attributable to the offending labels, and no more"); *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2014 WL 6815779, at *8 (N.D. Cal. Dec. 3, 2014) (determining the appropriate amount of restitution under a quasi-contract claim "will likely involve demonstrating what portion of the sale price was attributable to the value consumers placed on the" allegedly misleading labels). Victor contends that the "product as labeled" is the retail purchase price. Mot. at 16 [Dkt. No. 73]. He asserts that because the product is legally worthless and selling it is a criminal act, the "product as received" has a value of $0. *Id.* at 16-17. Therefore, "the measure of the restitution is the average retail purchase price minus $0." *Id.* at 17.

The "full refund" method of calculating restitution has been repeatedly rejected in this district. *See, e.g.*, *Jones v. ConAgra Foods, Inc.*, No. 12-cv-01633-CRB, 2014 WL 2702726, at *23 (N.D. Cal. June 13, 2014) (rejecting the "legally worthless" damages model); *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-2724-LHK, 2014 WL 2191901, at *22 (N.D. Cal. May 23, 2014) ("[F]ull refund model is deficient because it is based on the assumption that consumers receive no benefit whatsoever from purchasing the accused products."); *Lanovaz v. Twinings N. Am., Inc*., No. 12-cv-02646-RMW, 2014 WL 1652338, at *6 (N.D. Cal. Apr. 24, 2014) (rejecting the "full refund" model as an appropriate measure of restitution). Attributing a value of $0 to the Black Tea Products assumes that consumers gain no benefit in the form of enjoyment, nutrition, caffeine intake, or hydration from consuming the teas. This is too implausible to accept.[3] In order

---

[3] In fact, Victor testified he enjoyed the taste of Bigelow's tea, finding it "very tasty." Victor Depo. at 30: 30 [Branson Decl., Exh. 1].

6

1   to comply with Rule 23(b)(3) requirements, the damages calculation must contemplate "the
2   production of evidence that attaches a dollar value to the consumer impact or advantage caused by
3   the unlawful business practices." *Lanovaz*, 2014 WL 1652338, at *6 (internal quotation marks
4   and citations omitted). Accordingly, Victor must present a damages model that can likely
5   determine the price premium attributable only to Bigelow's use of the allegedly misleading claim.
6   The proposed methodology does not do so. Notably, in the same order where I clarified the
7   appropriate restitution calculation, I expressly stated that the proper measure of restitution in a
8   product mislabeling case is "not the full purchase price or all profits." Dkt. No. 68 at 1. I reject
9   Victor's attempt to circumvent this limitation now.

10   Alternatively, Victor seeks nominal damages. Mot. at 18. But Victor has not cited a single
11   case granting a plaintiff nominal damages under the California Unfair Competition Law ("UCL"),
12   Cal. Bus. & Prof. Code § 17200 *et seq*.[4] California courts have repeatedly held that relief under
13   the UCL is generally limited to injunctive relief and restitution. *See Clark v. Superior Court*, 50
14   Cal. 4th 605, 610 (2010) ("In a private unfair competition law action, the remedies are generally
15   limited to injunctive relief and restitution.") (internal quotation marks and citations omitted); *Cel-*
16   *Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999) ("Prevailing
17   plaintiffs are generally limited to injunctive relief and restitution."). As the Supreme Court of
18   California has explained, the legislative goal of the UCL was to provide an "equitable means" by
19   which to deter unfair business practices by creating a "streamlined procedure for the prevention of
20   ongoing or threatened acts of unfair competition. Because of this objective, the remedies provided
21   are limited." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003) (internal
22   citations and quotation marks omitted). Allowing claims for damages outside the scope of the
23   court's "power to order restitution," as envisioned by the legislature, would "thwart this objective
24   by requiring the court to deal with a variety of damage issues of a higher order of complexity."

---

[4] Similarly, Victor has not demonstrated entitlement to nominal damages under his unjust enrichment/quasi contract claim, his only other cause of action. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution.") (internal quotation marks and citations omitted).

7

1  *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 774 (Ct. App. 1989).

2  Victor relies on *Avina v. Spurlock*, 8 Cal. App. 3d 1086 (Ct. App. 1972) to argue that
3  nominal damages are available where there is a "technical invasion of a plaintiff's right" or when
4  there has been "real, actual injury and damages suffered by plaintiff." Mot. at 18. However,
5  *Avina* concerns California Code of Civil Procedure section 3360, which provides for nominal
6  damages when there has been "a breach of duty." Cal. Civ. Code § 3360. Here Victor has not
7  identified a duty, let alone a breach of duty. Without demonstrating that his claims involved these
8  elements, Victor is not entitled to nominal damages under section 3360. *See Jones*, 2014 WL
9  2702726, at *23 (finding that because plaintiffs' claim had nothing to do with a breach of duty,
10 and plaintiffs did not identify one, they were not entitled to nominal damages under section 3360).

11 Accordingly, Victor has failed to satisfy the requirements of Rule 23(b)(3).

## II. RULE 23(b)(2)

A class can be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). To establish standing for prospective injunctive relief, a plaintiff must demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm . . . coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal quotation marks and citations omitted). A plaintiff must establish a "real and immediate threat of repeated injury." *Id*. (internal quotation marks and citations omitted). The alleged threat cannot be "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks and citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Victor "seeks (b)(2) certification to enjoin [Bigelow] from continuing to mislabel the subject products." Reply at 15. However, for at least two reasons, Victor has not demonstrated standing to seek injunctive relief.

8

First, Victor has not plausibly alleged an intent to purchase Bigelow products in the future. In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). Victor testified that he was misled by the "*delivers healthful antioxidants*" statement into believing that he was "receiving healthy antioxidants in each serving of Bigelow tea that would suffice a daily recommendation." Victor Depo. at 69:20-23. However, he now knows this is not true. Nevertheless, Victor argues that despite being misled in the past, he would consider purchasing Bigelow tea again in the future if his request for injunctive relief is granted.

Victor's testimony is unconvincing. "[A] plaintiff may not manufacture standing for injunctive relief simply by expressing an intent to purchase the challenged product in the future." *Rahman*, 2014 WL 5282106, at *6. Victor's testimony is contradictory with regard to his future intent to purchase Bigelow tea. When asked whether he had any plans to purchase Bigelow Tea, he unequivocally answered "No" and explained that he feels lied to and questions whether he can trust the company. Victor Depo. at 55:8-12 ("Q: Okay. Good. Do you have any plans to purchase any Bigelow products in the future? A: No. Q: Why not? A: I feel lied to. How can I trust the company?"). He also affirmed his disinterest in purchasing Bigelow products despite the new packing that removes the allegedly misleading phrase. *Id*. at 60:7-13 ("Q: Okay. And if you look on the new label, do you also notice that the language no longer includes the statement, 'Delivers healthful antioxidants'? A: It does appear that way. Q: And is your answer the same that, despite that change, you would still not purchase this product? A: You are correct."). However, later on in the deposition, he testified that he would "consider" purchasing Bigelow tea again if an injunction were granted to prevent Bigelow from using the disputed phrase. *Id*. at 67:13-18 ("Q: So it's your testimony that if you were granted an injunction to prevent Bigelow from putting the statement back on the box, you would, then purchase Bigelow black tea products again? A: I would consider purchasing Bigelow black tea products.").

This is nonsensical. An injunction removing the antioxidant claim would not address Victor's previously stated motivations to refrain from purchasing Bigelow products – namely his

9

1  feeling of being lied to and consequential distrust of the Bigelow brand.  Additionally, Victor
2  provides no explanation why an injunction, which would enjoin the use of the disputed claim,
3  would motivate him to consider purchasing Bigelow's tea in the future when he has no interest in
4  buying Bigelow tea as currently packaged without the statement.

5  Second, standing for injunctive relief in this case requires more than simply declaring an
6  intent to purchase the Black Tea Products in the future.  Victor's testimony that he might
7  "consider" purchasing Bigelow products in the future does not establish a likelihood of suffering
8  the same harm he has alleged.  *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 981 (C.D. Cal.
9  2015) ("Plaintiffs' equivocal, speculative assertion that they 'may consider' or 'will consider'
10 purchasing [defendant's products] in the future if they are not mislabeled does not satisfy [Article
11 III's] standard."): *see also Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-cv-00296-WHO, 2014 WL
12 1017879, at *6 (N.D. Cal. Mar. 13, 2014) ("Plaintiffs must be must be threatened by the same
13 alleged harm in order to seek injunctive relief, even if on behalf of a class of consumers.").
14 Plaintiffs like Victor, who were previously misled by deceptive food labels and now claim to be
15 better informed, lack standing for injunctive relief because there is no danger that they will be
16 misled in the future.  *See Ham v. Hain Celestial Grp., Inc.*, No. 14-cv-02044-WHO, 2014 WL
17 4965959, at *6 (N.D. Cal. Oct. 3, 2014) ("Because [plaintiff] is now aware that [defendant's]
18 products [are mislabeled], she cannot allege that she would be fraudulently induced to purchase
19 the products in the future.").

20 For the reasons described above, Victor lacks standing to pursue injunctive relief and has
21 failed to satisfy the requirements of Rule 23(b)(2).

22 **III.   OTHER CLASS CERTIFICATION ISSUES**

23 The judges in this district have experienced numerous putative class actions challenging
24 allegedly mislabeled food products.  At least three cases involving similar class action
25 determinations are currently on appeal in the Ninth Circuit.  *See Jones*, 2014 WL 2702726 (appeal
26 filed July 15, 2014); *Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-01831-LHK, 2014 WL
27 6901867 (N.D. Cal. Dec. 8, 2014) (appeal filed December 18, 2014); *Kosta v. Del Monte Foods,*
28 *Inc.*, 308 F.R.D. 217 (N.D. Cal. 2015) (appeal filed October 02, 2015).

Because those cases implicate some of the central elements of the class certification inquiry, such as ascertainability, predominance, and appropriate damages modeling, many of my colleagues have decided to stay their mislabeling class actions pending the Ninth Circuit's decisions. *See, e.g.*, *Thomas v. Costco Wholesale Corp.*, No. 12-cv-02908-BLF, 2015 WL 6674696, at *3 (N.D. Cal. Nov. 2, 2015) (granting a stay in litigation pending the appeals); *Astiana v. Hain Celestial Group*, No. 11-cv-6342-PJH, Dkt. No. 114, at 3 (N.D. Cal. October 29, 2015) (same); *Park v. Welch Foods, Inc.*, No. 12-cv-6449-PSG, Dkt. No. 77, at 3 (N.D. Cal. October 22, 2015) (same); *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-0492-BLF, 2015 WL 3548212, at *4 (N.D. Cal. June 5, 2015) (same); *Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 WL 6986421, at *4 (N.D. Cal. Dec. 10, 2014) (same). But both parties in this case wanted me to decide the class certification motion, so I have.

There remain other serious class certification issues implicated by this motion besides the problems with Victor's damages theories and his injunctive relief request. Is the proposed class is sufficiently ascertainable? Has Victor adequately demonstrated that there are questions of law or fact common to the entire class? Bigelow's label change, which allegedly removes the "*delivers healthful antioxidants*" statement from the Black Tea Products during the class period, calls into question whether potential class members who were misled by the disputed statement are readily identifiable. Similarly uncertain is Victor's ability to offer a method of classwide proof that a reasonable customer would find the statement material.

I do not decide these other issues now because I have determined that the problems with Victor's damages theories and injunctive relief request preclude certification. But in the event this order is appealed, reversed, and remanded, I suspect that in the intervening time the Ninth Circuit will have issued useful guidance in some of the other pending appeals that will help answer the other serious questions raised by Victor's motion.

**CONCLUSION**

Victor's motion for class certification is DENIED.[5]  A Case Management Conference is set for May 17, 2016.

**IT IS SO ORDERED**.

Dated: March 29, 2016



WILLIAM H. ORRICK
United States District Judge

---

[5] Bigelow filed a motion to seal certain exhibits and portions of the Declaration of Keith R. Ugone related to pricing information of its tea products.  Dkt. No. 81.  Because I find that the provided justifications satisfy either the good cause or compelling reasons standard, the motion is GRANTED.  Bigelow also filed an objection to the Declaration of F. Edward Scarbrough.  Dkt. No. 82-1.  Because I do not rely on that declaration in reaching my conclusion, the objection is OVERRULED AS MOOT.